IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JAMES M. HOUSTON,                          Case No. 6:13-cv-01318-AA

        Plaintiff,                       OPINION AND ORDER

   v.

YONCALLA SCHOOL DISTRICT NO.
32, a political subdivision
of the State of Oregon, et al.,

        Defendants.

_____

AIKEN, Chief Judge:

    Plaintiff filed suit alleging gender and age discrimination,

violations of his constitutional rights under 42 U.S.C. § 1983, and

various state law claims. Defendants move to dismiss plaintiff's

claims for failure to state a claim upon which relief may be

granted. See Fed. R. Civ. P. 12(b)(6). In response, plaintiff

opposes the motion and seeks to amend his complaint a second time.

1   - OPINION AND ORDER

BACKGROUND

The following facts are taken from plaintiff's complaint, though the court clarifies certain allegations that contradict documents submitted by plaintiff.[1]

Plaintiff is a substitute teacher and receives teaching assignments through the Douglas Education Service District (DESD). Plaintiff's claims generally arise from a four-week period of employment as a substitute teacher for the Yoncalla School District (YSD), during which time he developed and taught a class for students with emotional, social, and/or behavioral difficulties (the Opportunity Classroom) at Yoncalla Elementary/Middle School in Yoncalla, Oregon.

On or about August 29, 2012, former Yoncalla Elementary/Middle School principal Jerry Fauci recruited plaintiff to develop and teach the Opportunity Classroom. Fauci represented that the position was budgeted up to $50,000 in salary and benefits and involved a six-hour work day.

On August 31, 2012, Fauci, YSD Human Resources Director Andrew Boe, DESD Special Education Specialist Nancy Vogel, and a DESD Therapeutic Learning Center teacher interviewed plaintiff. Shortly thereafter, Fauci offered and plaintiff accepted the Opportunity

---

[1]For example, plaintiff alleges that he filed a discrimination complaint with the Equal Employment Opportunity Commission (EEOC) in February 2013; however, the EEOC complaint attached to plaintiff's original complaint reflects a filing date in April 2013. Compl. Ex. 1 (doc. 1).

2    - OPINION AND ORDER

Classroom position. Fauci stated that plaintiff's contract would be finalized in one week and that plaintiff would be hired and paid as a substitute teacher in the meantime. At plaintiff's request, Fauci agreed to pay plaintiff the equivalent of long-term substitute teacher wages until his contract was finalized. Fauci allegedly represented that Boe would have a contract ready by September 7, 2012.

Plaintiff began developing the curriculum and program for the Opportunity Classroom. During his first week, plaintiff worked an excess of six hours a day after Boe stated that he was allowed to work eight hours a day while receiving long-term substitute teacher wages.

Plaintiff did not receive a finalized contract by September 7, 2012. Fauci told plaintiff that he would look into the finalization of plaintiff's contract.

On September 11, 2012, the YSD posted a job announcement for a position in the Opportunity Classroom on the Oregon Department of Employment website. The job posting was not disclosed to plaintiff.

On September 14, 2012, plaintiff met with Boe regarding his contract. Boe informed plaintiff that he could not give plaintiff "credit" for his experience as a special education teacher in a private school, or for his work as a counselor and social worker. Boe indicated that the teacher's union would file a grievance if he did so. Boe offered plaintiff a contract with a yearly salary of

3    - OPINION AND ORDER

$24,000 and stated that plaintiff would earn higher wages as a long-term substitute teacher. However, plaintiff knew that he would essentially be an "at will" employee, without benefits, as a substitute teacher. Plaintiff did not accept Boe's offer.

Plaintiff obtained the collective bargaining agreement between YSD and the Yoncalla Education Association (YEA). According to plaintiff, the agreement provided that a newly-hired teacher must be given credit for private-school teaching experience and other experiences that affected proficiency in teaching. Plaintiff also met with YEA union president, Lisa Champoux, who similarly indicated that plaintiff should be given credit for his teaching experience at a private school.

On September 28, 2012, plaintiff again met with Boe to share the information he had obtained from YEA and Champoux. Boe indicated that the position in the Opportunity Classroom had changed from a contractual position to a long-term substitute position. Plaintiff alleges that Boe stated he could find a replacement teacher, but that plaintiff would have a "hard time" finding a job at his age. Boe also stated he might reconsider the nature of the position if plaintiff accepted the $24,000 salary offer; Boe informed plaintiff he could then file a grievance with the union and seek additional compensation. Plaintiff responded that he would not accept the salary and that he likely would leave the position before winter break.

In addition to salary issues, plaintiff alleges that he and Boe discussed safety concerns at the school, including several student threats that plaintiff learned of in September 2012.

Later on September 28, 2012, plaintiff discovered that Boe had assigned him as a long-term substitute through December 2012; plaintiff rejected the assignment through the computerized assignment system. Plaintiff then contacted Fauci and informed him that he would no longer be working as a substitute teacher in the Opportunity Classroom.

At some unspecified time, plaintiff alleges that he filed a tort claim notice against the YSD and gave it to the YSD School Board during a November 2012 Board meeting. Afterward, plaintiff alleges that he was told that he was excluded from meetings generally open to the public, including the parent advisory board meetings.

On December 14, 2012, plaintiff - under the alias "John Holiday" - wrote letters to the editor of the Douglas County News and to Yoncalla community leaders regarding threats to student safety in the YSD. Plaintiff also hung fliers around the community relaying the same information. Plaintiff contends he concealed his identity due to fear of retaliation by other schools in which he worked as a substitute teacher.

Plaintiff alleges that on the next day, December 15, 2012, Boe filed a complaint against plaintiff with the Oregon Teacher

Standards and Practices Commission (TSPC) and asserted that plaintiff had failed to report threats to students as he is required to do. Plaintiff apparently received notice of Boe's complaint - and another complaint by a "patron of Yoncalla School District" - in November 2013, a full eleven months after Boe allegedly filed the complaint. Houston Aff. Ex. 3 (doc. 56-1).

After publication of plaintiff's December 14 letters, YSD defendants allegedly held an emergency meeting to address the safety issues raised by plaintiff and made statements to the press, allegedly defaming plaintiff.

In March 2013, plaintiff again wrote a letter to the editor under the same alias, urging voters to reject a school bond levy for Roseburg public schools. Plaintiff alleges that immediately after the letter was published, an "unknown individual" excluded plaintiff from the computer system that assigns substitute teachers in Roseburg schools. Second Am. Compl. ¶ 65. Plaintiff further alleges that defendant Parsons, the Superintendent of Roseburg Public Schools, "issued this directive." Id.

Plaintiff also alleges that unidentified defendants contacted other schools in the area and, as a result, plaintiff has been unable to secure employment as a substitute teacher.

On April 8, 2013 plaintiff filed an EEOC complaint and alleged claims of age and equal pay discrimination against YSD. On May 3, 2013, the EEOC issued plaintiff a "Right to Sue" letter.

On July 31, 2013, plaintiff filed his complaint, and on October 21, 2013, plaintiff filed an amended complaint.

At some point, plaintiff alleges that defendants offered to write him a favorable letter of recommendation if he dropped his claims, and they refused to provide such a letter if he did not.

Defendants now move to dismiss plaintiff's claims for failure to state a claim upon which relief may be granted under Federal Rule of Civil Procedure 12(b)(6). Plaintiff opposes the motion in its entirety and seeks leave to file a second amended complaint.

## STANDARDS

When resolving a motion to dismiss under Rule 12(b)(6), a complaint is construed in favor of the plaintiff, and its factual allegations are taken as true. Daniels-Hall v. Nat'l Educ. Ass'n, 629 F.3d 992, 998 (9th Cir. 2010). However, the court need not accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." Id. Rather, "for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." Moss v. U.S. Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "[O]nce a claim has

been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 563 (2007).

Under Federal Rule of Civil Procedure 15(a), leave to amend pleadings should be given "freely" "when justice so requires." Fed. R. Civ. P. 15(a)(2). When considering a motion to amend, the court should consider factors including bad faith, undue delay, prejudice to the opposing party, futility of the amendment, and whether previous amendments have been allowed. United States v. Corinthian Coll., 655 F.3d 984, 995 (9th Cir. 2011); Nunes v. Ashcroft, 375 F.3d 805, 808 (9th Cir. 2004).

DISCUSSION

Plaintiff appears in this action pro se. Given his status and the liberal pleading standard under Rule 15, I am inclined to allow his proposed Second Amended Complaint. I therefore consider defendants' motion to dismiss as applied to plaintiff's newly amended claims. If a previously-alleged claim is not included in his Second Amended Complaint, I consider the claim withdrawn.

A. Title VII and Age Discrimination

1. Title VII Discrimination and Retaliation

In Count I of his Second Amended Complaint, plaintiff alleges that defendants discriminated against him because of his age and denied him equal pay in violation of Title VII. However, Title VII does not redress age discrimination. See 42 U.S.C. § 2000e-2(a)(1)

(prohibiting employment discrimination based on "race, color, religion, sex, or national origin"). Instead, plaintiff's age discrimination claim is correctly brought under the Age Discrimination and Employment Act (ADEA) as discussed below.

To the extent plaintiff's "equal pay" claim can be construed as gender discrimination, plaintiff sets forth insufficient facts to support such a claim. Under Title VII, plaintiff must allege that he was offered a lower salary or paid differently from similarly-situated teachers based on his gender, i.e., because he is male. Hawn v. Executive Jet Mgmt., Inc., 615 F.3d 1151, 1156 (9th Cir. 2010). To support this claim, plaintiff alleges only that a female teacher was given "credit" for her teaching experience in private schools, while he was not. Second Am. Compl. ¶ 92. However, plaintiff does not allege that this teacher was similarly situated; that she taught special education classes or was given credit for special education experience in a private school setting. Further, plaintiff alleges that this female teacher - like plaintiff - also was denied credit for her private school experience until she threatened to quit. Id. ¶ 48.

Moreover, plaintiff repeatedly alleges that the Opportunity Classroom position was changed to a long-term substitute position in order to save YSD money, not because of plaintiff's gender. Id. ¶¶ 48, 122. Plaintiff makes no allegation that any defendant referenced his gender or otherwise treated him differently because

9    .- OPINION AND ORDER

he was male. Thus, plaintiff does not allege sufficient facts to support the inference that he was offered a lower salary because he is male. Plaintiff's Title VII discrimination claim is therefore dismissed.

Plaintiff also purports to allege a claim for Title VII retaliation. See Second Am. Compl. ¶¶ 82, 109-110; 42 U.S.C. § 2000e-3(a) (prohibiting retaliation if an employee or applicant "has opposed any practice" unlawful under Title VII). To assert a prima facie case of retaliation, plaintiff allege that: 1) he engaged in activity protected under Title VII; 2) he was subjected to an adverse employment action; and 3) a causal link exists between the protected activity and the adverse employment action. Brooks v. City of San Mateo, 229 F.3d 917, 928 (9th Cir. 2000).

Plaintiff's alleged protected activity consists of his EEOC complaint filed in April 2013 and this litigation filed in July 2013.[2] Plaintiff contends that various defendants retaliated against him by filing a false complaint with the TSPC, banning him from YSD Board meetings, conspiring to deny him employment as a substitute teacher, and providing negative employment references. Second Am. Compl. ¶ 82.

---

[2]Plaintiff's letters to the editor regarding the safety of Yoncalla schools and the Roseburg school levy do not constitute protected activity under Title VII, as they did not report unlawful employment discrimination. These allegations - and any alleged retaliatory conduct - are discussed in the context of First Amendment retaliation.

However, the alleged TSPC complaint and plaintiff's exclusion from school board meetings allegedly occurred in November and December of 2012 - several months prior to his EEOC and federal court complaints. Therefore, these actions cannot form the basis of a Title VII retaliation claim.[3]

Further, plaintiff fails to allege sufficient facts to support a "conspiracy" to deny him employment; he merely speculates that unidentified defendants contacted other schools or districts. Plaintiff also fails to allege that he did, in fact, receive a negative employment reference based on his EEOC or federal complaint. Instead, plaintiff alleges only conclusory allegations that unnamed defendants must have contacted other school to provide negative information about him. Second Am. Compl. ¶¶ 70, 158.

Finally, defendants' alleged offer to provide a favorable reference in exchange for dismissal of plaintiff's claims is considered a settlement negotiation under Fed. R. Evid. 408(a) and would not be admissible. Second Am. Compl. ¶ 76. Therefore, plaintiff's Title VII retaliation claim is dismissed.

2. Age Discrimination

Plaintiff also alleges age discrimination in Count I, claiming that defendants discriminated against him and offered him a low salary because of his age. See Diaz v. Eagle Produce Ltd.

---

[3]Regardless, plaintiff's exclusion from YSD meetings would not constitute an "adverse employment action" under Title VII.

Partnership, 521 F.3d 1201, 1207 (9th Cir. 2008). Plaintiff must show that his age "'actually played a role in [the employer's decisionmaking] process and had a determinative influence on the outcome.'" Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 141 (2000) (quoting Hazen Paper Co. v. Biggins, 507 U.S. 604, 610 (1993)).

The sole allegation involving age is Boe's alleged statement that plaintiff would have a "hard time" finding a comparable position due to his age if plaintiff rejected the salary Boe offered. This lone, stray comment cannot sustain a claim of age discrimination, and the claim is dismissed. See Merrick v. Farmer's Ins. Group, 892 F.2d 1434, 1438-39 (9th Cir. 1990) ("stray remarks" regarding age are insufficient to establish age discrimination).

B. Section 1983 Claims

Plaintiff alleges several claims under 42 U.S.C. § 1983 against all defendants, including the YSD and DESD.

With respect to plaintiff's claims against YSD and DESD, "[a] government entity may not be held liable under 42 U.S.C. § 1983, unless a policy, practice, or custom of the entity can be shown to be a moving force behind a violation of constitutional rights." Dougherty v. City of Covina, 654 F.3d 892, 900 (9th Cir. 2011) (citing Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978)). Liability may be established through "an expressly adopted official policy, a long-standing practice or custom, or the decision of a

12   - OPINION AND ORDER

final policymaker." Ellins v. City of Sierra Madre, 710 F.3d 1049,
1066 (9th Cir. 2013) (internal citation omitted). Thus, to state a
claim for municipal liability against either educational entity,
plaintiff must allege that an official policy or practice, or a
decision by a final policymaker of YSD or DESD, caused a violation
of his constitutional rights.[4]

### 1. First Amendment Retaliation

In Counts II and VI of his Second Amended Complaint, plaintiff
alleges retaliation, which the court construes as claims alleging
retaliation in violation of plaintiff's First Amendment rights.

To state a First Amendment retaliation claim, plaintiff must
allege that: 1) he spoke on a matter of public concern; 2) he spoke
as a private citizen and not as a public employee; and 3) his
speech was a substantial or motivating factor in an adverse
employment action or other retaliatory conduct. See Eng v. Cooley,
552 F.3d 1062, 1070-71 (9th Cir. 2009); Mendocino Envtl. Ctr. v.
Mendocino Cnty., 192 F.3d 1283, 1300 (9th Cir. 1999).

"Speech involves a matter of public concern when it can fairly

---

[4]In Count III, plaintiff alleges "unconstitutional" policies
against YSD and DESD. Plaintiff alleges that the defendants
"independently and in concert with one another and through their
official policymakers," engaged in several types of misconduct,
including the failure to develop appropriate polices and
encouragement of policies that violated rights. Second Am. Comp.
¶¶ 119, 122. However, an "unconstitutional policy" is not an
independent claim under § 1983; rather, an official policy or
practice must be the moving force behind the violation of a
specific constitutional right. Thus, plaintiff's claim in Count
III is dismissed.

be considered to relate to 'any matter of political, social, or other concern to the community.'" <u>Johnson v. Multnomah Cnty.</u>, 48 F.3d 420, 422 (9th Cir. 1995) (quoting <u>Connick v. Myers</u>, 461 U.S. 138, 146 (1983)). In contrast, "speech that deals with individual personnel disputes and grievances and that would be of no relevance to the public's evaluation of the performance of governmental agencies is generally not of public concern." <u>Coszalter v. City of Salem</u>, 320 F.3d 968, 973 (9th Cir. 2003) (internal quotation marks and citation omitted).

Plaintiff's alleges the following protected speech: 1) his November 2012 tort claim notice filed against YSD; 2) his December 2012 letters disclosing unsafe school conditions within the YSD; 3) his March 2013 letter to the editor criticizing the Roseburg school levy; 4) his April 2013 EEOC complaint; and 5) this action filed in July 2013. Second Am. Compl. ¶¶ 102-03, 110, 157-59.[5]

As alleged, plaintiff's speech is protected by the First Amendment, as the speech involved matters of public concern and was not pursuant to plaintiff's duties as a public employee. I therefore consider whether plaintiff has sufficiently alleged that

---

[5]Plaintiff also suggests that his September 2012 conversation with Boe about student safety constitutes protected speech. Plaintiff allegedly informed Boe of the threatening student behavior while discussing his salary demands with Boe, intending to notify Boe of the safety concerns he had witnessed during his employment. As alleged by plaintiff, such statements were made pursuant to his duties as a public employee and not a private citizen. Therefore, these statements cannot support a First Amendment retaliation claim.

the his protected speech was a "substantial or motivating factor" in the alleged retaliatory actions.

First, plaintiff alleges that he was banned from school board and other public, educational meetings in retaliation for serving a tort claim notice on YSD. However, plaintiff fails to allege who specifically forbade him from attending public school meetings and when his exclusion began. Such facts are necessary to determine whether plaintiff sufficiently alleges a claim against individual defendants or a claim against the YSD. Given that plaintiff's existing allegations could plausibly support a First Amendment retaliation claim, plaintiff is granted one last opportunity to amend his complaint and cure these deficiencies.[6]

Second, plaintiff alleges that Boe filed a false complaint with the TSPC in retaliation for plaintiff's letters to the editor and community members regarding threats to student safety. Construing plaintiff's allegations liberally in his favor, I find that they suffice to state a claim for First Amendment retaliation against Boe, and potentially against YSD or DESD if Boe was a final decision or policymaker. This claim will be allowed to proceed.

Next, plaintiff alleges that Parsons excluded him from teaching in Roseburg schools in retaliation for plaintiff's letter to the editor - written under an alias - criticizing the Roseburg

---

[6]Plaintiff's First Amendment retaliation claim was first raised in the Second Amended Complaint; therefore, I will allow the opportunity to amend.

school levy. Plaintiff alleges that "[i]ndirect evidence plausibly indicates that one or more of the Defendants" contacted Parsons and told him that plaintiff was the true author of the March 2013 letter, and that Parson retaliated against him. Second Am. Compl. ¶ 66. Although Parsons informed plaintiff that individual school administrators - and not Parsons - make the decision whether to exclude substitute teachers, plaintiff maintains Parsons's statement is "a bold-face lie." Id. ¶ 104.

Plaintiff's allegations against Parsons appear to be based on nothing more than speculation. Plaintiff alleges no facts to support an inference that Parsons, in fact, excluded plaintiff from substitute teaching at Roseburg schools. Instead, plaintiff merely states that it would be "impossible" for school administrators to simultaneously exclude him from several schools, and that the newspaper publisher told plaintiff it was "no coincidence" he was excluded from Roseburg schools on the same day that his letter was published. Second Am. Compl. ¶¶ 104-05. These allegations do not support an inference that it was Parsons who excluded plaintiff. Plaintiff maintains that "discovery" will reveal Parson's role. Id. ¶ 161. However, plaintiff cannot file a lawsuit without supporting facts in the hope of later discovering facts to support his theories. Rather, plaintiff must plead sufficient facts in his complaint, and he fails to do so.

Finally, plaintiff alleges that unnamed defendants have

16   - OPINION AND ORDER

informed other school districts of his "whistleblowing," his EEOC
complaint, and this legal action, and that he has been excluded as
a substitute teacher in several schools or districts as a result.
Plaintiff also alleges that defendants provided negative
recommendations and caused him to lose employment opportunities.
However, plaintiff's allegations do not identify which defendant
contacted which specific school district, when defendants contacted
a school or district, or what information was provided to a
specific school or district. Rather, plaintiff merely speculates
that defendants must have spoken with other schools or districts,
because nothing else explains why he has not been hired to teach in
certain schools or school districts. Second. Am. Compl. ¶¶ 70, 158.
I find these allegations too conclusory to sustain a First
Amendment retaliation claim.

In sum, plaintiff's First Amendment retaliation claim against
Boe and YSD or DESD, based on Boe's alleged TSPC complaint, is
allowed to proceed at this time.[7] Further, plaintiff's retaliation
claim against the YSD and/or school board members may proceed once
plaintiff amends his complaint to identify who made the decision to
exclude him from public school meetings and when he was excluded,

---

[7]In their motion to dismiss, defendants repeatedly raise the
issue of qualified immunity. However, I do not find it
appropriate to address qualified immunity at this stage of the
proceedings, when the only question is whether plaintiff's
allegations state a claim. Defendants may raise qualified
immunity in support of a motion for summary judgment.

and once the court determines that the amendments sufficiently state a claim. Plaintiff's remaining allegations are insufficient to sustain retaliation claims, regardless of amendment, and they are dismissed.

### 2. Substantive and Procedural Due Process

In Count IV, plaintiff purports to allege violations of his substantive and procedural due process rights. "To state a prima facie substantive or procedural due process claim, one must, as a threshold matter, identify a liberty or property interest protected by the Constitution." United States v. Guillen-Cervantes, 748 F.3d 870, 872 (9th Cir. 2014). Further, "[a] constitutionally cognizable property interest in a benefit requires more than an abstract need or desire or a unilateral expectation of it — rather, there must be a legitimate claim of entitlement. This typically requires an individual to demonstrate that an existing law, rule, or understanding makes the conferral of a benefit mandatory." Id. (internal quotation marks and citations omitted).

Here, plaintiff fails to allege a liberty or property interest in pursuing his profession that was violated by defendants. Plaintiff did not have a contracted or permanent position with YSD or DESD and therefore cannot claim a protected property interest; he was a substitute or temporary teacher with no entitlement to continued employment at a particular school or district. See Jacobs v. Kunes, 541 F.2d 222, 225 (9th Cir. 1976).

Likewise, plaintiff does not allege a protected liberty interest. Public disclosure of a charge that "impairs a reputation for honesty or morality" may implicate a liberty interest, and an employee must be allowed to refute such a charge when made in connection with termination. Tibbetts v. Kulongoski, 567 F.3d 529, 536 (9th Cir. 2009); Llamas v. Butte Cmty. Coll. Dist., 238 F.3d 1123, 1129 (9th Cir. 2001). Here, plaintiff generally alleges that defendants harmed his reputation as a substitute teacher. However, "[i]njury to reputation resulting from false charges, made under color of the State, however, does not give rise to a § 1983 claim." Coukoulis v. Mercer, 1999 WL 551143, at *4 (D. Or. June 29, 1999) (citing Siegert v. Gilley, 500 U.S. 226, 234 (1991)).

Therefore, plaintiff fails to allege the deprivation of a protected property or liberty interest necessary to state a claim for denial of his substantive or procedural due process rights, and these claims are dismissed.

### 3. Equal Protection

In Count V, plaintiff alleges that defendants treated him differently from others similarly situated in violation of his equal protection rights. Defendants correctly argue that this claim should be dismissed, because a class-of-one theory is not recognized in the public employment context. "In concluding that the class-of-one theory of equal protection has no application in the public employment context . . . we are guided, as in the past,

19   - OPINION AND ORDER

by the 'common-sense realization that government offices could not function if every employment decision became a constitutional matter.'" Enquist v. Or. Dept. of Agr., 553 U.S. 591, 607 (2008) (citation omitted).

Accordingly, plaintiff cannot sustain a class-of-one equal protection claim, and this claim is dismissed.

### 4. Conspiracy to Commit Constitutional Violations

In Count VII, plaintiff alleges that defendants conspired to violate his constitutional rights. Defendants argue that plaintiff's conspiracy claim should be dismissed because he fails to allege sufficient facts to meet the requisite heightened pleading standard.

"To establish the defendants' liability for a conspiracy, a plaintiff must demonstrate the existence of an agreement or meeting of the minds' to violate constitutional rights." Mendocino Envtl. Ctr., 192 F.3d at 1301 (internal quotation marks and citations omitted). "The defendants must have, by some concerted action, intend[ed] to accomplish some unlawful objective for the purpose of harming another which results in damage." Id. Thus, to survive a motion to dismiss, a plaintiff must allege "nonconclusory allegations containing evidence of unlawful intent or face dismissal prior to the taking of discovery." Harris v. Roderick, 126 F.3d 1189, 1195 (9th Cir. 1997) (quotations marks and citation omitted).

Plaintiff generally alleges that defendants' conduct

> was undertaken pursuant to an agreement or meeting of the minds among Defendants to act in concert to violate Dr. Houston's constitutional rights, chill his free speech, prohibit anticipated criticisms against Yoncalla School District's K-12 system of public education and educational reform activities, and to intimidate, harass, and exact revenge for the media attention it brought upon the district as well as his complaints filed with the EEOC and BOLI and threatened lawsuit naming the Defendants.

Second Am. Compl. ¶ 170.

Plaintiff's allegations are conclusory and do not allege facts to show an agreement between the alleged conspirators. Further, plaintiff does not allege which defendants conspired against him or what actions they took in furtherance of any conspiracy. At most, plaintiff alleges that unnamed defendants informed Parsons of the pseudonym plaintiff used in his letters to the editor and contacted other schools to provide negative information about plaintiff. Such allegations do not state a claim for conspiracy. Therefore, plaintiff's conspiracy claim is dismissed.

## C. State Law Claims

### 1. Whistleblower Retaliation

In Count VIII, plaintiff alleges a claim of whistleblower retaliation under Oregon law.[8] Similar to his First Amendment retaliation claim, plaintiff alleges that defendants retaliated

---

[8]In Count XIII, plaintiff also alleges federal whistleblower retaliation; however, plaintiff does not allege he was a federal employee. Therefore, the federal statute does not apply and this claim is dismissed.

21   - OPINION AND ORDER

against him for: 1) filing an EEOC complaint and this litigation; 2) serving a tort claim notice on the YSD; 3) disclosing unsafe conditions in schools within the YSD; 4) and writing a letter to the editor criticizing the proposed levy for Roseburg schools. Defendants allegedly denied him employment in Roseburg schools, threatened to provide negative employment references, and filed a false complaint with the TSPC.

> Oregon law renders it unlawful for a public employer to:
>
> (b) Prohibit any employee from disclosing, or take or threaten to take disciplinary action against an employee for the disclosure of any information that the employee reasonably believes is evidence of:
>
>> (A) A violation of any federal or state law, rule or regulation by the state, agency or political subdivision; [or]
>>
>> (B) Mismanagement, gross waste of funds or abuse of authority or substantial and specific danger to public health and safety resulting from action of the state, agency or political subdivision[.]

Or. Rev. Stat. § 659A.203(1)(b).

At the outset, the whistleblower statute does not apply to plaintiff's letter to the editor expressing his opinion about the Roseburg school levy; this letter is not a "disclosure" under the statute. To the extent plaintiff's tort claim, EEOC complaint, federal lawsuit, and letters regarding school safety constitute "disclosures," plaintiff alleges no "disciplinary action" taken as a result of these actions.

"Disciplinary action" is defined as "any discrimination,

dismissal, demotion, transfer, reassignment, supervisory reprimand, warning of possible dismissal or withholding of work, whether or not the action affects or will affect employee compensation." Or. Rev. Stat. § 659A.200(1). Here, plaintiff claims that he was excluded from YSD school board meetings, threatened with negative employment recommendations, and falsely reported to the TSPC.

However, his exclusion from school meetings was not a "disciplinary action" taken in context of his employment. Likewise, Boe's TSPC complaint is not a "disciplinary action" under the statute. Plaintiff does not allege that he received a reprimand in his DESD file, was denied work, or that he suffered any other adverse employment action as a result of the TSPC complaint. To the contrary, plaintiff alleges that he was told Boe's complaint was not meritorious. Further, as explained earlier, plaintiff makes no specific allegation that a specific defendant contacted a school or district and provided a negative recommendation; he alleges only speculation. Finally, defendants' offer to write a positive recommendation in exchange for dismissal of plaintiff's claims was made in context of negotiation and is therefore inadmissible. Fed. R. Evid. 408(a). Therefore, plaintiff's allegations cannot sustain a claim for whistleblower retaliation.

2. Negligent and Intentional Infliction of Emotional Distress

In Count IX, plaintiff alleges claims of intentional and negligent infliction of emotional distress (IIED and NIED).

23    - OPINION AND ORDER

To state a claim for IIED, plaintiff must allege:

(1) that defendants intended to cause plaintiff severe emotional distress or knew with substantial certainty that their conduct would cause such distress; (2) that defendants engaged in outrageous conduct - i.e., conduct extraordinarily beyond the bounds of socially tolerable behavior; and (3) that defendants' conduct in fact caused plaintiff severe emotional distress.

Checkley v. Boyd, 198 Or. App. 110, 124, 107 P.3d 65 (2005)(quoting McGanty v. Staudenraus, 321 Or. 532, 543, 901 P.2d 841 (1995)).

However, defendants' alleged conduct does not qualify as extraordinary transgressions of socially acceptable conduct. It is well established that the tort of IIED "does not provide recovery for the kind of temporary annoyance or injured feelings that can result from friction and rudeness among people in day-to-day life." Hetfeld v. Bostwick, 136 Or. App. 305, 308, 901 P.2d 986 (1995). Rather, "[t]he conduct is an extraordinary transgression if it is so offensive as to be outrageous or outrageous in the extreme." Id. (internal quotation marks and citations omitted). The alleged retaliatory conduct does not rise to this level. Watte v. Edgar Maeyens, Jr., M.D., P.C., 112 Or. App. 234, 239, 828 P.2d 479 (1992) (conduct that is "insulting, rude, boorish, tyrannical, churlish and mean" does not constitute IIED).

With respect to NIED, Oregon "consistently has rejected claims for emotional distress damages caused by a defendant's negligence, in the absence of any physical injury." Paul v. Providence Health System-Oregon, 351 Or. 587, 597, 273 P.3d 106 (2012). Further,

plaintiff does not allege a "special relationship" or a duty owed by defendant. Hammond v. Cent. Lane Commc'ns Ctr., 312 Or. 17, 27, 816 P.2d 593 (1991). Therefore, these claims are dismissed.

### 3. Defamation

In Count X, plaintiff alleges defamation, libel, and/or false light invasion of privacy.

"Under Oregon law, a claim for defamation has three elements: '(1) the making of a defamatory statement; (2) publication of the defamatory material; and (3) a resulting special harm, unless the statement is defamatory per se and therefore gives rise to presumptive special harm.'" Neumann v. Liles, 261 Or. App. 567, 576, 323 P.3d 521 (2014) (quoting Nat'l Union Fire Ins. Co. v. Starplex Corp., 220 Or. App. 560, 584, 188 P.3d 332 (2008)).

Oregon courts adopt the Restatement (Second) of Torts definition for invasion of privacy by false light:

> One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy, if
>
> > (a) the false light in which the other was placed would be highly offensive to a reasonable person, and
> >
> > (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.

Marleau v. Truck Ins. Exchange, 333 Or. 82, 92, 37 P.3d 148 (2001) (quoting Restatement § 625E (1977)).

25   - OPINION AND ORDER

Plaintiff alleges that unnamed defendants made false statements that plaintiff "did not get along with co-workers" and that his performance as a substitute teacher was "not acceptable." Second Am. Comp. ¶ 198.[9] However, plaintiff does not identify who made these statements and whether and how they were published. Therefore, I find plaintiff's allegations insufficient.

Plaintiff also alleges that "[d]efendants are responsible for the publication of false and misleading statements in the Douglas County News." Second Am. Compl. ¶ 201. Again, plaintiff does not identify which defendants are responsible - aside from the attorney for YSD, who is not named as a defendant in this action - and he does not describe the alleged defamatory statements or indicate when they were published. Therefore, plaintiff fails to state a claim for defamation or invasion of privacy through false light.

### 4. Negligence and Gross Negligence

In Counts XI and XII, plaintiff alleges negligence and gross negligence. However, plaintiff's claims fail to allege a special relationship or a duty owed by defendant beyond the common-law duty to exercise reasonable care to allow a negligence claim for purely economic losses. Lowe v. Philip Morris USA, Inc., 344 Or. 403, 413-14, 183 P.3d 181 (2008). Therefore, plaintiff cannot sustain claims for negligence.

---

[9]Plaintiff also alleges that Boe's TSPC complaint defamed him. However, filing a complaint with a state agency does not constitute "publication."

26   - OPINION AND ORDER

5. Promissory Estoppel

In Count IVX, plaintiff asserts a claim for promissory estoppel, alleging that Fauci and Boe "promised" him a contract with salary and benefits up to $50,000, and that he should receive the benefits of that promise. "In Oregon, it is well recognized that promissory estoppel . . . is a subset of and a theory of recovery in breach of contract actions." Neiss v. Ehlers, 135 Or. App. 218, 227-28, 899 P.2d 700 (1995). Generally, "promissory estoppel can apply, under appropriate circumstances, to promises that are indefinite or incomplete, including agreements to agree." Id. at 228, 899 P.2d 700. Plaintiff does not allege facts to support promissory estoppel.

The elements of promissory estoppel are: "(1) a promise, (2) which the promisor, as a reasonable person, could foresee would induce conduct of the kind which occurred, (3) actual reliance on the promise, (4) resulting in a substantial change in position." Furrer v. Sw. Or. Comm. College, 196 Or. App. 374, 382, 103 P.3d 118 (2004). If a party meets these elements, a court may - pursuant to its equitable power - compel performance of the promise.

However, the alleged promise of a contract in this case was not only indefinite and incomplete, it is not enforceable under a promissory estoppel theory. Allegedly, Fauci and Boe promised to provide plaintiff with a teaching contract of up to $50,000 in salary and benefits; Boe subsequently offered a salary of $24,000,

and plaintiff rejected it. By plaintiff's own allegations, the amount of his salary was never agreed upon or "promised" by Boe or Fauci; therefore, the only "promise" that could be compelled is the promise to offer a contract, which Boe did offer to plaintiff.

Moreover, plaintiff's allegations do not establish a "substantial change in position." Plaintiff does not allege that he rejected other salaried teaching positions or that he otherwise lost employment opportunities during the four weeks he taught in the Opportunity Classroom. Further, plaintiff received long-term substitute wages, and once he realized he would not receive the contract to which he believed he was entitled, he quit the position. Thus, plaintiff does not allege sufficient detrimental reliance to sustain a claim for promissory estoppel, and this claim is dismissed.

### 6. Breach of Contract

In Count XV, plaintiff alleges that YSD, through Fauci and Boe, breached the teaching contract with plaintiff. "Oregon subscribes to the objective theory of contract, which provides that the existence and terms of a contract are determined by evidence of the parties' communications and acts." Rhoades v. Beck, 260 Or. App. 569, 572, 320 P.2d 593 (2014) (citing Newton/Boldt v. Newton, 192 Or. App. 386, 392, 86 P.3d 49 (2004)).

Based on plaintiff's own allegations, the parties did not reach a meeting of the minds as to the existence and terms of any

28   - OPINION AND ORDER

contract. Rather, plaintiff was told that the position had been budgeted for up to $50,000, and that a contract would be finalized in a week. Boe subsequently offered plaintiff a salary of $24,000, suggesting that plaintiff could accept the $24,000 salary offer and file a grievance to seek additional compensation. Ultimately, Boe said he would "get back to" plaintiff on the salary issue after looking into other sources of funds. Second Am. Compl. ¶ 51.

Therefore, as the terms of a contract were never in agreement, plaintiff cannot state a claim for breach of contract.

### 7. Unfair Labor Practices

In Count XVI, plaintiff alleges unfair labor practices arising from Fauci's and Boe's actions in negotiating the terms of the Opportunity Classroom position. However, this court does not have jurisdiction over this claim, because it first must be filed with the Oregon Employment Relations Board (ERB). Regardless, the ERB no longer has jurisdiction, because plaintiff did not file a written complaint within 180 days following the occurrence of the alleged unfair labor practice. Or. Rev. Stat. § 243.672(3); see Jefferson Cnty. v. Or. Pub. Employees Union, 174 Or. App. 12, 20 n.4, 23 P.3d 401 (2001). Therefore, this claim is dismissed.

### 8. Fraud

In Count XVII, plaintiff alleges a claim of fraud. Plaintiff alleges that Fauci and Boe falsely stated that plaintiff would receive a contract for his position in the Opportunity Classroom,

with the intent that plaintiff rely on the false statement and agree to teach the class.

To establish fraud, plaintiff must allege 1) a material, false representation made by the defendant; 2) the defendant's knowledge of its falsity; 3) the defendant's intent that the plaintiff rely on the misrepresentation; 4) the plaintiff's justifiable and detrimental reliance on the misrepresentation; and 5) damages as a result of such reliance. Horton v. Nelson, 252 Or. App. 611, 616, 288 P.2d 967 (2012).

Similar to plaintiff's claim of promissory estoppel, I find that plaintiff fails to allege detriment reliance or damages arising from the alleged false representation. Before he taught in the Opportunity Classroom, plaintiff was a substitute teacher, and he received substitute teaching wages during his four-week tenure in the Opportunity Classroom. Plaintiff does not allege that he rejected permanent or higher-paying teaching positions in reliance on Fauci's and Boe's statements, and he therefore cannot allege detrimental reliance or damages arising from his reliance. While plaintiff alleges damages in the amount of the contract he expected to receive, those are not damages plaintiff suffered in reliance on defendants' statements; those are damages plaintiff would have suffered from a breach of contract, had a contract existed.

Therefore, I find that plaintiff fails to state a claim for fraud, and this claim is dismissed.

### 9. Breach of the Duty of Good Faith and Fair Dealing

Finally, in Count XVIII, plaintiff alleges that defendants breached the covenant of good faith and fair dealing. Oregon law implies a duty of good faith and fair dealing in the performance of every contract consistent with the objectively reasonable contractual expectations of the parties. See Uptown Heights Assoc. Ltd. Partnership v. Seafirst Corp., 320 Or. 638, 644-645, 891 P.2d 639 (1995). Here, no contract existed to be performed between the parties, as explained above. Therefore, plaintiff cannot sustain this claim, and it is dismissed.

### CONCLUSION

Plaintiff's Motion for Leave to Amend (doc. 55) is GRANTED and the court accepts plaintiff's Second Amended Complaint; any claim not alleged in the Second Amended Complaint is considered withdrawn and dismissed.

Defendants' Motion to Dismiss (doc. 48) is GRANTED, in part, as applied to plaintiff's Second Amended Complaint. Plaintiff may proceed with his First Amendment retaliation claims based on the plaintiff's exclusion from public school meetings and Boe's TSPC complaint against plaintiff, once plaintiff amends his complaint as set forth on pages 15 and 17 of this Opinion and Order.

The remainder of plaintiff's allegations are insufficient to plausibly support his claims. Given that plaintiff has already twice amended his complaint, and his amendments filed in response

to defendants' motion do not cure the deficiencies, further amendment will not be allowed. Therefore, plaintiff's Claims alleged in Counts I, III through V, and VII through XVIII are HEREBY DISMISSED.

Plaintiff shall file a <u>short and plain</u> amended complaint within thirty (30) days from the date of this order. Plaintiff shall include no other claims or amendments other than those allowed, as set forth above. **<u>Plaintiff is advised that the failure to file an amended complaint as directed by the court will result in dismissal of plaintiff's remaining retaliation claims.</u>**

Plaintiff also is advised that - while the court must construe his pro se complaints liberally - plaintiff is nonetheless held to the standards of an attorney in other respects, including the requirements of Federal Rule of Procedure 11.[10] Should plaintiff be

---

[10]Rule 11(b) provides:

> By presenting to the court a pleading, written motion, or other paper — whether by signing, filing, submitting, or later advocating it —

an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

> > (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

> > (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;

found to have made false or unsupported, frivolous allegations against any of the defendants, plaintiff shall be ordered to show cause why he should not be sanctioned under Rule 11(c).

IT IS SO ORDERED.

DATED this 11th day of July 2014.

Ann Aiken
United States District Judge

---

> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Rule 11(c) states:

If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation.

33    - OPINION AND ORDER